# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
**UNITED STATES OF AMERICA** )
) **CRIMINAL ACTION**
**v.** )
) **NO.  3:17-30022-TSH**
**ISAAC CARDONA,** )
)
            **Defendant.** )
_____ )


## ORDER AND MEMORANDUM ON PLAINTIFFS' MOTION TO SUPPRESS EVIDENCE (Docket No. 196)

### October 23, 2019

**HILLMAN, D.J.**

The United States of America (the "Government") charged Isaac Cardona ("Defendant") with conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine and conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin. Defendant now moves to suppress evidence obtained pursuant to a search warrant and an order of this Court.  (Docket No. 196).  For the following reasons, the Court ***denies*** the motion.

### Background

In 2015, the U.S. Drug Enforcement Agency ("DEA") began investigating suspected drug trafficking and money laundering activities by David Cruz ("Mr. Cruz").  As part of that investigation, the DEA tracked communications between phones associated with Mr. Cruz and other numbers.  One of those numbers, (413) 657-5385 (the "5385 Phone"), was registered in the name of Luis Colon, although the user identified himself as "Isaac" in several text messages.  On May 16, 2016, the DEA obtained a search warrant to confirm the identity of the user of the 5385

Phone (the "May Order"). The DEA determined that Isaac Cardona ("Defendant"), the son of Rafael Cardona, Sr., one of Mr. Cruz's former drug associates and a suspected member of the drug trafficking conspiracy, was at the same location as the phone during several of the intercepts.

On July 6, 2016, the Court authorized the DEA to intercept the wire and electronic communications of the number (413) 777-3204 ("TT1") and the wire communications of the number (413) 204-3199 ("TT2") for 30 days (the "July Order"). The Court extended its authorization on August 3, 2016, and August 31, 2016. Pursuant to this authorization, the DEA intercepted phone calls between the Defendant and Rafael Cardona, Sr., who was using TT2, about drug trafficking and money laundering activities. A grand jury issued a Superseding Indictment charging Defendant and several others with conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine and conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin. On August 8, 2019, Defendant moved to suppress evidence gathered under the May Order and July Order. (Docket No. 196). The Court held a hearing on this motion on October 2, 2019. (Docket No. 227).

## Discussion

### 1. May Order

As a preliminary matter, the Government contends that Defendant does not have standing to challenge the May Order. The Fourth Amendment only protects individuals to the extent they have a reasonable expectation of privacy against invasion, and a defendant carries the burden of making a threshold showing of a reasonable expectation of privacy. *See United States v. Stokes*, 829 F.3d 47, 51 (1st Cir. 2016). According to the Government, because Defendant denies ownership or use of the 5385 Phone, he cannot show any reasonable expectation of privacy in its

geolocation.  The Court rejects this argument.  The Government applied for a search warrant to

confirm that the Defendant used the 5385 Phone.  The geolocation data obtained showed

Defendant in the same location as the phone.  Under the circumstances, the Court cannot say he

lacked a reasonable expectation of privacy in the 5385 Phone's geolocation.[1]  *See Carpenter v.*

*United States*, 138 S. Ct. 2206, 2217 (2018).

Defendant contends that the Government failed to establish probable cause for the May

Order.  The Court disagrees.  The May Order incorporates the affidavit of Agent John McGrath

("Agent McGrath"), *see* Docket No. 220-1 at 2 ("I find that the affidavit(s) . . . establish probable

cause to search and seize the person or property described above . . . ."), and Agent McGrath's

affidavit establishes probable cause.[2]  For example, in his affidavit, Agent McGrath stated that

the 5385 Phone is registered in the name of Luis Colon.  (Docket No. 220-2 at 27).  The user of

the 5385 Phone, however, identified himself as "Isaac" in several messages intercepted under a

state court warrant.[3]  (Docket No. 220-2 at 26–27).  Agent McGrath testified that, in his

experience, "drug dealers often use cellular phones subscribed to relations, non-existent

---

[1]     While attribution of a phone to the defendant by the Government does not necessarily
suffice to meet the defendant's burden to demonstrate a legitimate expectation of privacy, *see
United States v. Gatson*, 744 F. App'x 97, 100 (3d Cir. 2018), *cert. denied*, No. 18-9700, 2019
WL 4922309 (Oct. 7, 2019), this case involves something more than attribution.  The
Government has geolocation data showed Defendant in the same location as the phone.  It cannot
offer that data to prove Defendant's use of the phone and simultaneously prevent Defendant from
challenging the validity of the search producing that data.

[2]     Defendant contests the validity of this affidavit.  But even assuming for the purposes of
this motion that it contains false statements, Defendant has not shown that Agent McGrath made
these statements with knowledge of falsehood or a reckless disregard for the truth.  *See United
States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012) ("[T]o get a Franks hearing, a party must first
make two 'substantial preliminary showings': (1) that a false statement or omission in the
affidavit was made knowingly and intentionally or with reckless disregard for the truth; and (2)
the falsehood or omission was necessary to the finding of probable cause.").

[3]     Defendant argues that the state court warrant was invalid.  (Docket No. 197 at 21).  He
fails to offer any support for this argument, however, so the Court cannot address its merits.

individuals, and false names and addresses in order to conceal the real user of the cellular phone." *See* Docket No. 220-2 at 27; *see also United States v. Hoffman*, 832 F.2d 1299, 1306 (1st Cir. 1987) (noting that a court may consider "the imprimatur of agents specially trained in the ways of drug trafficking"). Agent McGrath also noted that 5385 Phone had exchanged hundreds of calls and/or texts over the span of a few months with Magaly Colon, Defendant's mother; Rafael Cardona, Sr., Defendant's father; Mr. Cruz,[4] the subject of the drug trafficking investigation; and Eduardo Sanchez-Sierra, another suspected member of the drug trafficking conspiracy. (Docket No. 220-2 at 32). In his experience, a high "volume of calls . . . and the fluctuation of use and disuse of a cellphone number are consistent with how drug dealers use cellular phones to conduct their drug trafficking business." *See* Docket No. 220-2 at 31–32; *see also Hoffman*, 832 F.2d at 1306. Given this evidence, the Court determines that probable cause supports the May Order.

Defendant alternatively argues that the district court exceeded its jurisdictional authority under Federal Rule of Criminal Procedure 41(b) in issuing the May Order. (Docket No. 197 at 21–22). The Court rejects this contention. Because 18 U.S.C. § 2307 contains its own geographical scope, Defendant's argument relies on the assumption that geolocation data is not an electronic communication "affecting interstate commerce" under § 2307.[5] (Docket No. 197 at 21). But the geolocation data obtained under the May Order was sent electronically by a service

---

[4] While Defendant's family has a close relationship with Mr. Cruz (Docket No. 197 at 20), there is no evidence that Agent McGrath was aware of any connection between the two beyond the 1990s drug association between Mr. Cruz and Rafael Cardona, Sr., and the fact that Mr. Cruz's "possible step-sister's mother was named Cardona" (Docket No. 220 at 12), so this relationship does not undermine the probable cause analysis.

[5] The Court rejects Defendant's contentions that the geolocation data, which was sent via the internet, does not constitute an electronic communication and that the warrant is invalid because it does not reference Luis Colon, the subscriber.

provider who operates in interstate commerce, so it plainly affects interstate commerce within the meaning of the Commerce Clause. And in any event, even if the geolocation data did not fall within § 2307 and Rule 41(b) controlled, it would be admissible under the good faith exception. *United States v. Ackies*, 918 F.3d 190, 202–03 (1st Cir. 2019) (finding that the good faith exception applies even when a court violates Federal Rule of Criminal Procedure 41(b)); *see also United States v. Leon*, 468 U.S. 897, 922–23 (1984). Defendant has not offered any evidence of unreasonable reliance or bad faith to render the good faith exception inapplicable here.

## 2. *July Order*

### A. *Facial Sufficiency*

Defendant contends that the July 6, 2016, order authorizing the interception of wire and electronic communications with TT1 and wire communications with TT2 fails on its face because it does not adequately describe "the type of communication subject to seizure." (Docket No. 197 at 6). To survive on its face, an "order authorizing or approving the interception of any wire, oral, or electronic communication" must specify, *inter alia*, "a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates." 18 U.S.C. § 2518(4)(c). Because "conversations are not like physical evidence" and their content cannot be known in advance, courts approach this requirement flexibly in the context of electronic surveillance. *United States v. Gambale*, 610 F. Supp. 1515, 1538 (D. Mass. 1985). "The key question is whether . . . the warrant's description of the communications authorized to be intercepted was sufficiently particular to give clear direction as to which communications could be lawfully intercepted and recorded and which could not." *United States v. Samuels*, 436 F. Supp. 2d 280, 284 (D. Mass. 2006).

The Court determines that the July Order was "sufficiently particular to give clear direction as to which communications could be lawfully intercepted and recorded and which could not." *See id.* The July Order authorizes the interception of wire and electronic communications over TT1 and wire communications over TT2 concerning the participants of the drug trafficking conspiracy, the nature and scope of the illegal activity, and the nature of the relationships among the parties. (Docket No. 220-7 at 3–4). And it provides for a screening system to determine which communications may be intercepted and recorded and which may not. (Docket No. 220-7 at 8–9). The order admittedly does not state which specific drug trafficking and money laundering statutes pertain to each type of communication, but it elsewhere finds probable cause that Defendant and other individuals:

> [H]ave committed, are committing, and will continue to commit offenses enumerated in 18 U.S.C. § 2516, that is the possession with intent to distribute and distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1); the use of a communication facility, to wit: a telephone, to commit, facilitate or further the commission of drug trafficking offenses, in violation of 21 U.S.C. § 843(b); conspiracy to commit drug trafficking offenses, in violation of 21 U.S.C. § 846; and money laundering and engaging in monetary transactions of property derived from specified unlawful activities, in violation of 18 U.S.C. §§ 1956 and 1957.

(Docket No. 220-7 at 3). As "the 'particular offense' requirement in section 2518(4)(c) is satisfied when a wiretap order simply lists the charging statute," the Court finds that the combination of the listed charges with the description of the communications to be intercepted meets the particularity requirement. *See United States v. Gordon*, 871 F.3d 35, 44 (1st Cir. 2017).

### B. *Unconstitutional to Authorize Real Time Location Services*

Defendant challenges the portion of the July Order allowing the DEA to use real time locations services to track the physical location of TT1 and TT2. (Docket No. 197 at 11). Defendant, however, lacks standing to assert this argument. As noted above, the Fourth

Amendment only protects individuals to the extent they have a legitimate expectation of privacy and security against invasion. *See Stokes*, 829 F.3d at 51. The Supreme Court held in *Carpenter* that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured" by tracking the location of his phone. 138 S. Ct. at 2217. But Defendant did not own use TT1 or TT2. He thus does not fall within the scope of *Carpenter*. *See United States v. Johnson*, No. CR 17-10129-LTS, 2019 WL 917175, at *6 (D. Mass. Feb. 25, 2019), *appeal dismissed*, No. 19-1299, 2019 WL 4580368 (1st Cir. Apr. 16, 2019) ("But however *Carpenter* may have narrowed the third-party doctrine with respect to information stored on a service provider's server and associated with one's own account, that case did not address one's expectation of privacy in the electronic information, wherever stored, of another user."). As Defendant has not shown he had a legitimate expectation of privacy in the record of the other individuals' physical movements,[6] *see Stokes*, 829 F.3d at 51, Defendant's claim fails.

C. *Probable Cause*

Defendant asserts that the July Order does not establish probable cause as to his involvement in the conspiracy. (Docket No. 197 at 15). The Court disagrees. Evidence obtained under the May Order, upheld earlier in this order, showed Defendant in the same location as the 5385 Phone. (Docket No. 220-4 at 25–26). The phone, however, was registered to a Luis Colon allegedly living at the location of a Boost Mobile store. (Docket No. 220-4 at 25). Agent McGrath testified that drug dealers often register phones under fake names and addresses, so the mismatch between owner and user supports probable cause. *See Hoffman*, 832 F.2d at 1306. Additionally, after pulling the phone records for the 5385 Phone, investigators

---

[6] And to the extent he contends that, under Title III, any aggrieved party has standing, he fails to demonstrate how this search of the location of other individuals aggrieved him.

found that it had exchanged 165 calls and texts with numbers associated with Mr. Cruz in the period from November 25, 2015, and February 13, 2016.  (Docket No. 220-4 at 26).  The 5385 Phone also had contacted many of the same (non-family member) numbers as phones owned by Mr. Cruz and Defendant's father.  (Docket No. 220-4 at 26).  Given this record, the Court had probable cause to include Defendant in the July Order.

### Conclusion

For the reasons stated above, the Court _**denies**_ Defendant's motion to suppress.  (Docket No. 196).

**SO ORDERED**

_**/s/ Timothy S. Hillman**_
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**